You'll hear argument first this morning in Case 12-842, the Republic of Argentina v. NML Capital Ltd. Mr. Blackman. Mr. Chief Justice, and may it please the Court, the sweeping worldwide forensic examination of foreign state property that the Court of Appeals approved targets sovereign property that the FSIA makes categorically immune from process of U.S. courts, including diplomatic, military property, national security assets, property of the state's current and former presidents, and other property outside the United States. This far exceeds the enforcement powers of U.S. courts under the FSIA. Aren't those issues of privilege? And didn't the Court below permit you to raise those questions as individual items came up, as individual accounts? Because the subpoena is only asking Bank of America for or the banks for their information. Some of them may be of that nature, but wasn't the district court going to monitor that? Well, two answers to your question. First, Justice Sotomayor, the FSIA comes logically and legally before issues of privilege as to a specific asset. There's a categorical limitation of execution and all process in aid of execution to property in the United States used for commercial activity. That's on what you can execute. FSIA itself doesn't say anything about discovery. The FSIA doesn't have a provision, except for 1605G, which specifically talks about permissible discovery. But the statute very much delineates the bounds of permissible discovery when it delineates the universe of executable property. The legislative system doesn't. In an ordinary State case, let's say, you get a judgment in New York, and the judgment is not satisfied. And so there is this kind of an inquiry into what property the losing defendant owns. Cannot you find out what property that defendant owns in Florida? In Florida, certainly, yes. But the New York court has its writ does not run to Florida. The way he rules the case You have to bring another lawsuit in Florida, right? And so also here, the writ of the Second Circuit doesn't run to France. You may have to bring a separate suit in France. But I don't see that it goes beyond the bounds of what the law allows the discovery to cover. Rule 69, which has never been construed in the area of discovery in aid of execution by this Court, provides for discovery in aid of execution. And in aid of execution, logically, needs to mean the execution that could be ordered by the court ordering the discovery. Scalia. But that's absolutely not true, because the New York court cannot order execution on property in Florida. You have to bring another cause of action in Florida. And yet, you certainly can find out what property the deadbeat defendant owns in Florida. Rule 69 also says specifically, Justice Scalia, that it is subject to a Federal statute that governs where applicable. And the advisory committee notes, clearly lists a whole host of exemption statutes. Ginsburg. You're saying that you can't inquire into property that would be exempt anywhere. That's the difference. You may have to bring a separate suit in Florida, or probably if it's a Federal judgment, you just register it there. But in the typical case, the judgment debtor is exposed, all of her assets are exposed. And just here, I think what you're saying is the statute, the Foreign Sovereign Immunity Act, confines what can be executed, whether Florida, France, any place, it's got to be property, commercial property in the United States. Is that right? That's exactly correct, Justice Ginsburg. And I was referring to the exemptions that are listed in the advisory committee notes, because they list things like homestead and veterans' benefits and other categories of assets. Breyer, I mean, I read this like Justice Scalia. I thought when you read Rule 69, obtaining discovery, you can obtain it in aid of the judgment or execution as provided in these rules. So you look to the rule on discovery, it's certainly broad enough to encompass this. I thought, of course, you can get discovery in an appropriate case to find out if the judgment creditor or debtor has property in Florida. And the question is, well, can you do the same thing where the executable property is in France? And I think that's the issue, at least as I saw it. And I don't see – well, there are two, three ways of doing it. One, you could just say no. Two, you could say yes, but the State Department has to tell you it won't mix everybody up. Or you could say yes, but the State Department has the right to come in and tell you it will mix everybody up. I mean, those are three possibilities. Or you could say, let's mix them all up. Those are the four. In other words, the Court can just do it on its own. So I see four possibilities. Now, maybe I'm not analyzing it correctly, but that's where I was starting, where Justice Scalia started. If I could respond to some of those points, Justice Breyer. Talking about the State Department brings us back to why do we have this statute. We have this statute to avoid ad hoc judicial or political interventions. Before the statute, there was absolute immunity for foreign State property. I know, but to sort of shorten this, I understand there's a statute. The statute says nothing about discovery. The statute does permit you to execute on property within the United States anyway. And it does that under exceptions which are relevant here. For example, in the back of the bond, they said we waive all sovereign immunity. So it does allow for execution in the United States. It does, in fact, say nothing about discovery in aid of execution. The rules do. Okay. So I've given you four possibilities that I could see. There may be five or six. Which do you favor? Why? I favor saying that in aid of execution means in aid of execution permitted by the substantive law. There's no statute that we've thought of or could find where discovery is untethered from the substantive provisions of the statute. Do you contend that you cannot levy upon commercial property in foreign countries where those countries have the same kind of Foreign Sovereign Immunity Act as we do? When you get a judgment in New York, can you take that judgment and levy upon commercial property of Argentina in France? To the extent and only to the extent that the judgment would be recognized by a French judge. Oh, of course. The U.S. court could not levy on that. So you are entitled to find out what property Argentina has in France. And your only complaint is you shouldn't be able to find out what non – what property that is not subject to the Foreign Sovereign Immunity Act is in France, right? Well, the property that's subject to the Foreign Sovereign Immunity Act is only  I don't know, but you acknowledge that you can levy on property in France. You can take your New York judgment, go to France, and so long as the property is commercial property and France has the same, which it does, the same modern rule that the Sovereign Immunity Act does not extend to commercial property, you can satisfy your judgment in France, right? That's a matter with respect to French law and what the French court would permit excluding discovery. That's fine, of course. But that doesn't mean you can't find out and go to France and roll the dice in France, right? Well, we would suggest that. You're saying you can't even play the game. No. We're saying that the way you play the game is to do what the Respondent here has done for many years, which is to pursue discovery of property in the United States that's executable by the process of a U.S. court. If it wants to go abroad. I can't understand this. If you acknowledge that you can go after property in France, but you assert you are not entitled to find out what property Argentina has in France. That's a function of a statute which deliberately circumscribes the normal powers of a court. I suppose I don't see exactly the same question. It's the only reason that you cannot ask a New York court for discovery to tell us where in the world there is property upon which we can levy. They don't want to know about property where they can't levy. They don't want to know about property they can't execute, so they're happy to write into that, even if it isn't written, which they think it is. We're only talking about property that we can seize, no other property. Now, you agree that we can go do that in respect to property in California, Florida, and New Mexico. Well, in today's world, we want the same information about France, Italy, and Turkey. And by the way, we won't take one penny from those countries except in accordance with the law of those countries, not a penny. We'll get the information, we'll go over, and we'll ask the court. Now, why not? The reason besides the language of the statute is common. I didn't find language in the statute that forbids it, but I'll look that up again. If the language is not an absolute barrier, why not? Well, first of all, the order here, Your Honor, isn't limited to property that's executable. Let's assume we go back and we say it has to be limited to property that they have a right to obtain to under execution. So we all agree between the two of us we're going to do that. Now, why not? Okay. Well, we would welcome very much limited. Okay, okay, I'm interested, though, about Turkey, France. The why not is because logically, if you're thinking in terms of the statute, the statute doesn't distinguish between the categories that I hope I heard the Court say you would exclude, which the lower court here did not exclude, and which the plaintiff, in fact, was eagerly pursuing, diplomatic, military, national security, et cetera. The statute doesn't distinguish between those categories of non-executable property and property outside the United States, which under the terms of the statute, 1609 and 1610, is equally non-executable. Alitoson, if there were a limitation, if there were a limitation of that sort, how would the district court possibly decide what could be executed on in, let's say, there are 40 countries where Argentina has property, the district court would have to look at 40 issues of foreign law. Could this be executed on in Turkey, in Italy, in France, et cetera? We would say no, and that's why it shouldn't get into that thicket. No, but you said on your fallback position was at least it should be limited to property that could be, on which there could be execution in the country where  How would the court go about doing that? I would impose, Justice Alito, a bar that is consistent with international law and practice, that discovery cannot extend under any circumstances to diplomatic property, to military property, to national security assets, to property of a sitting or former head of State of a country, to State officials, to entities other than State dependents. We're waiting. What about property in another country? We're waiting. Okay. After you've drawn that line, I would submit that the bright line should simply be if it's property that a U.S. court could execute on, that's fair game for tailored discovery. But we, I think, all agree that the U.S. court can't execute on foreign property. Ginsburg. Ginsburg. In saying that, are you giving up the argument you started to make before Justice Breyer gave you four ways? You pointed out that Rule 69, the discovery rule, says that these rules are subject to statutes of the United States, the Foreign Sovereign Immunities Act is one, statutes of the United States when applicable, govern under this rule, and then there's a slew of examples of statutes that limit what you can attach, what you can add, and what you can't execute on. I thought that that's the – if that's right, then your answer now, well, as long as it's the same kind of property in France, the answer would be the only thing you can discover relates to property in the United States. Absolutely, Justice Ginsburg. I was giving a potential fallback in the event that the Court doesn't agree with that. That is absolutely Argentina's position. Alito, what if Argentina were a private, a foreign company? Could you get ex – could you have discovery of assets in other countries under Rule 69? That's a question this Court has never actually addressed. It doesn't, and I don't think you need to address it here, because you have a governing statute, as Justice Ginsburg said, which is deliberately designed to restrict the scope vastly. Breyer, it restricts the scope of execution. Right. The word – there are two different statutes. Look at the rule. Rule 69 talks in A about execution of money judgments, and in A it talks about the need to conform to statutes. In B, it talks about obtaining discovery. It doesn't say a word about American statutes. It talks about the rules and statutes of a State, but it uses the word execution. So if you're saying it means execution in the United States and nowhere else, it applies to the private plaintiff just as much as to the private defendant just as much as to the other defendant. That would be a logical reading. I don't think the Court need to go there. All right. We need not, and I'm back to my question. Why not allow it with all these qualifications? And the only answer I've heard is from Justice Alito, who says that it would be too complicated to try to figure out all the laws of France and Turkey in relation to execution. Is there anything you want to add to that before you sit down? I want to add that just as the other slew of examples that I and Justice Ginsburg were referring to deal with specific categories of property that for good and sufficient reasons Congress has exempted and therefore you don't get discovery about them, the same is true of foreign State property. We have to come back, and I want to reserve time with the Court's permission, for rebuttal to the issue of comity. How can it be appropriate for a U.S. court to be asking a foreign State to turn over information about property that is beyond the execution powers of the court? Scalia. I found it extraordinary that we did not have, I think this is correct, a single brief from foreign countries. They file all the time when there's a case before us that they think trenches upon their prerogatives. Not a single foreign country, maybe because Argentina owes them money as well as it does these plaintiffs. Justice Scalia, I — on the question of owing money, one thing that's clear about this statute is it's designed for uniform treatment of States. It doesn't single out based on how much money you owe or how long the judgment is unpaid. I mean, that has to be right. This has to be a legal and even-handed ruling, and with all respect to Mr. Olson's rhetoric, which I'm sure you're about to hear, it has nothing to do with Argentina. This is a rule for all States, which is why the United States, talking about States, has supported our position. Thank you. Roberts. Thank you, counsel. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. The sweeping discovery order sustained by the Second Circuit, which establishes a district court in the United States as a clearinghouse for all of Argentina's transactions throughout the world, is contrary not only to the FSIA and its purposes, but to the fundamental principles of comity and international reciprocity on which it rests. And I want to point out that the United States — Wait, wait, wait, wait. I thought that the whole purpose of the Foreign Sovereign Immunities Act was to protect us from you, from the State Department and the government coming in and saying, oh, you know, in this case, grant this one, deny that one. I thought the whole purpose of the FSIA was to enable us to look at the case and decide it on the basis of the statute. But now you're coming in and saying, oh, there are principles behind the statute that we have to apply that extend the words of the statute beyond what they say, and they say nothing about finding out the assets of people abroad. Our position is that it is the statute that controls the principles of comity and reciprocity are ones that inform the interpretation of the statute. Scalia. What provision of the statute controls here? We think 1609, which establishes an immunity from execution, and that immunity from execution is subject to exceptions only within the United States. But more broadly, the structure, the entire structure of the FSIA is on matters within the United States. The exceptions from immunity are for transactions. You think the discovery is certainly okay with respect to those commercial interests on which the plaintiffs can execute? Yes, we do. And if it is within the United States. This thing is a little too broad. No, within the United States. We believe that it cannot extend to property outside the United States.  Sotomayor, do you agree with the American judgment and seek commercial property there? Assume undisputed there is a piece of land that they are using for a business purpose. That would be a matter for the French courts to decide under French law. But the United States would be gravely concerned about an order of a trial court in a foreign country entered at the behest of a private person seeking to establish a clearinghouse in that country of all the United States' assets for its many diplomatic,  Sotomayor, how often do you think the U.S. is going to default on paying a judgment? There are a number of circumstances in which the United States would, and some in which it has. The United States takes a strict view that there has to be service of process with 60 days' notice. Kennedy, if the judge might help me. Kennedy, but the questions from the Court so far have narrowed the issue to property on which there could be execution in a foreign, if it were in a foreign nation. And you say, well, a military and counselor. No, no. We're talking about property that if here would be subject to execution. What's wrong with asking the judgment debtor in this court, in this case, whether or not there are such assets, without reference to military and government officials, et cetera? Property that's used in commercial transactions on which there can be execution in the United States. If the discovery is about assets in the United States, but if we agree that the discovery is about assets that can be executed on, but they are in other countries. And you started saying, oh, but the military and so forth, that's not this case. I was giving those no, it is this case. Well, it's this case in the order, but it's not what the Court has been suggesting. Our position is basically a categorical one, because, again, in the reciprocal situation, the United States would be very concerned about a foreign court setting itself up as a clearinghouse for all United States assets and transactions around the world, whether or not we're talking about a military case. Breyer, we're trying to get away from this issue by assuming out of the case, the military things, all those lists. Then we're trying to assume out of the case anything that isn't relevant to an asset which you can attach and seize. And now we've got two sets in the United States, everybody agrees they can do it. And then there's a set abroad. We have a statute. We passed a case, Intel, which says anybody in America can go, you know, the Intel case, anybody can go into 1728 and go ask a trial judge to have the Los Angeles firm issue some discovery, and they're going to give that to the EU. We aid their judgments all the time. So what's the principle? What's wrong where it's clear like that with a court saying we want to find out if they have a supermarket chain in Sicily? Okay. What's wrong with that is a foreign sovereign is not the same as a foreign private person. The Foreign Sovereign Immunities Act, and this is consistent with Article 19 of the U.N. Convention, which establishes immunity of foreign States. It doesn't say with respect to property within the foreign states. Why haven't foreign countries protested? Why aren't they here as a meekie? Is there a single foreign State that has taken your position? The State Department has heard concerns from foreign countries, particularly those that are — They told us. They have to ask you to pass it along? I think they — They file amicus briefs all the time. And if this is as horrific as you are painting it, we would have had some briefs from them. If we look at the backdrop against which the FSIA was enacted, in 1952, the United States adopted the restrictive theory of sovereign immunity for liability, but it maintained, even then, the absolute immunity from execution. When Congress passed the FSIA in 1976, it noted that execution immunity was still somewhat controversial, and it did what the House report said was only partially lift that immunity. Well, prior to 1976, with an absolute immunity from execution within the United States or abroad, there could not have been any discovery. Counsel, I don't have a very good understanding about how this works in practice. Let's say that the discovery request on a French bank, the prevailing party has reason to believe that this is where Argentina deposits its rental income from properties around the United States. They know, they think they know, that Argentina has, you know, owns a townhouse that it rents out in the United States, and they think they will be able to discover where that is by going to the French bank account and seeing, well, every month they get $10,000 from this address in the United States. Can that be discovered or not? Yes. If it's assets within the United States, it can be discovered. But we think it's not. So they can so you, Argentina, or the defendant, the prevailing party, files a request saying give us anything that has anything to do with assets in the United States on the French bank, and that's fine. We think it should be more narrowly tailored, the discovery request. We think it should be more narrowly tailored, and that's fine.  We think it should be more narrowly tailored, and that's fine. But it has to be reasonably tailored to uncover assets that could be, that could be subject to execution. But when the assets are abroad, and I'd like to point out on page 28 of the House report, which has been made something of in this case, the House report says, Attachments in Aid of Execution. That phrase is intended to include attachments, garnishments, and supplemental proceedings, as page 52 of Respondent's brief points out. Supplemental proceedings include discovery of assets in aid of execution. There are several. Kaganan. Kaganan. Mr. Kneedler, can I take you back to a question? I think it was Justice Alito who asked it. Assume that there was a suit between private parties, and the private party that won the judgment thought that there were assets abroad. Do you have any question that the discovery rules would allow for discovery of what the person had abroad? Kneedler, We believe that Rule 69 would allow that, but it's, as Justice Ginsburg pointed out, it's the exemption in the FSIA which we believe is categorical. And this House report I was referring to when it was talking about supplemental proceedings, which includes discovery, says, after specifically referring to Rule 69. Kaganan. If you think that Rule 69 allows that, I mean, my next question was going to be what in the text would put a foreign government in a different position than the – than when a suit involved only private parties? Kneedler, I will talk about the text. The point I wanted to make about the committee report is it specifically says the property in question, meaning that subject to supplemental proceedings must be used for commercial activity in the United States. Congress's understanding of the statute it passed was that it had to do with assets  And it comes from the execution of the statute. Kaganan. What in the text puts you in a different position? If you have that view of 69, which extends abroad as well as within the United States, what in the text would suggest that we are not under that rule? 1610's exceptions from execution immunity are limited all to things within the United States. Alito But isn't the logical reason for that, why would Congress pass a law limiting execution on property in another country where there's no United States jurisdiction? How do you infer from that a desire to limit discovery? Kneedler, But it's true that the writs of U.S. courts do not run to foreign countries, but it isn't – when it comes to a foreign sovereign, that limitation is not just one of the writ not running as a matter of the district court's jurisdiction, it is also a matter of the immunity of the foreign sovereign. And this is the same point that comes with respect to immunity from liability. That is both jurisdictional of the court, but it is a substantive immunity for the foreign sovereign. And we think the same thing is true with respect to execution abroad. There's an immunity from that and, therefore, an immunity from discovery. Kennedy, Just one question. I thought that I would hear a lot about waiver in this case. Does the waiver in the bonds not affect this case or its outcome? Kneedler, It does not, because Section 1610 requires that the only property subject to execution is property within the United States used for commercial purposes. And that's true even when there is a waiver. That's the threshold, and then there are various categories, and waiver is one of them. So the property still must be used for commercial purposes within the United States. Roberts, Thank you, counsel. Mr. Olson. Olson, Thank you, Mr. Chief Justice, and may it please the Court. I would like to start with something that Mr. Kneedler has been talking about. He referred to the House report three or four times during his argument today, and he referred to it six times in his brief. He did not mention page 23, the top of which says, This bill, Foreign Sovereign Immunities Act, does not attempt to deal with questions of discovery. Existing law appears to be adequate in this area, for example, and then there are privileges that could be raised. That is a piece of the legislative history that the United States apparently has forgotten completely about. Secondly, the United States has said that there's a common law backdrop to the Foreign Sovereign Immunities Act dealing with discovery and aid of execution. Yet this Court, four years ago, in the Samantar case, says indisputably the Foreign Sovereign Immunities Act displaces the common law. That's what it's saying. But, Mr. Olson, you have said you make this distinction between the exemption in the Act and what can be discovered, but the discovery rule itself, the advisory committee, the note under the original drafting of the discovery rule says, Statutes of the United States on execution, and certainly the Foreign Sovereign Immunities Act is a statute of the United States on execution, govern under this rule. And in case you don't get the point, it lists, oh, a few dozen statutes. For example, it says that you can't execute, assign, execute, levy, or issue other legal process against a Federal employee's retirement annuities. And there are all kinds of provisions, substantive provisions, limiting what property is subject to execution. Olson, Yes, Justice Ginsburg. This case is not about execution. This case is about finding out information. Ginsburg But this is a note to the discovery rule. Olson Yes. Ginsburg It says that Rule 69, the discovery rule, is subject to statutes on execution. Olson But 69A2, as one of your colleagues pointed out, is the discovery in aid of execution. It provides the right to obtain information with respect to that that might be under the Federal rules of civil procedure which were not displaced by the Foreign Sovereign Immunities Act. And all we're talking about here is information. I should start with the fact that this the context of this case is that Argentina was able to sell bonds and to raise money in the United States, in the capital markets of the United States, only by agreeing to be bound by U.S. law, to be sued in and subject to the judgments of U.S. courts, and by waiving sovereign immunity and consenting to attachment in aid of execution. And there's even a reference in that waiver which was drafted for Argentina by sophisticated New York counsel in order to obtain money in the United States. Had Argentina said, and we won't pay the judgments, we won't obey the orders of United States courts, we will resist discovery when we spirit money outside of the United States, we will do all of those things, it would never have been able to borrow any money in the United States. Breyer What exactly does that have to do with the issues before this case? Verrilli, because exactly, Mr. Chief Justice, that's the context of why my clients are attempting to seek information with respect to where Argentina has moved its assets, it's the lower courts, the district courts. Roberts It seems to me that that context is totally irrelevant. You have a question, it doesn't matter what the basis of the underlying judgment is, the question is one of discovery. Verrilli, yes. And in every instance when someone is attempting to execute on a judgment, to pay, this is, there is no question that was jurisdiction of the court to issue the judgments. The judgments are valid and binding. Now the creditors are attempting to find out where the assets are. There is a history in this case and it could be in any other case. That's why it's a question of general application. Every credit, judgment creditor is looking for the assets of the judgment debtor. And many judgment debtors move those assets around in order to avoid having to pay the judgment debtor. Ginsburg Mr. Olson, but this is a sovereign. And as I understand the Foreign Sovereign Immunities Act, it says execution, the foreign sovereign has immunity, has immunity except, except when we're dealing with commercial property in the United States. So the statute starts with a blanket immunity against execution for the foreign sovereign and then says, but there is an exception for property, commercial property in the United States. Olson Well, there are several answers to that. First of all, section 1606 of the Foreign Sovereign Immunities Act, which is not mentioned in the government's brief at all, and the government specifically takes the district judge to task for treating Argentina like a private litigant, section 1606 says that if jurisdiction is established, the foreign State shall be liable in the same manner and to the same extent as a private individual under like circumstances. So the Foreign Sovereign Immunities Act specifically said that once jurisdiction is established, and it was not unquestionably established here, Argentina is to be treated to the same manner and to the same extent as a private litigant. Ginsburg I thought that that goes to jurisdiction and liability, the judgment of liability. Then there's a separate section on execution, and those two are not the same. You can have full authority to issue a judgment against Argentina. The execution portions of the statute are 1609 to 11, not 1606. Olson That's exactly correct, Justice Ginsburg. And when it comes time to execute on property identified by Argentina, it's actually the discovery is not addressed to Argentina. It is addressed to third party banks. Ginsburg Could it be addressed to Argentina? On your theory, I think it could. Olson We believe that it could be addressed to Argentina. No question. But that this particular case comes to you where the discovery is addressed to non-sovereigns who have not appealed and who are complying with the order pursuant to what the district court did. But what's the point? Ginsburg I thought they objected to it. Didn't the banks object? Olson Pardon me, Your Honor? Ginsburg The banks, I thought that they objected to the subpoena. Olson One of the parties objected to the subpoena. There were objections going back and forth. There was a narrowing of the scope of the subpoena. The subpoenas themselves may be found, and it's not for all of the terrible things that my colleague has mentioned. They are on the joint appendix at 54 and 55 and 91. Sotomayor It doesn't seem to me that the narrowing was we've been assuming that what we're talking about is discovery related to commercial property. But the subpoena is written much more broadly than that.  It's asking for bank transactions, Justice Sotomayor, and the reason for that is we do not know, and Argentina has provided plenty of reason for us to be suspicious as to where property is, how it's denominated, what it's being used for. If it is a piece of commercial, if it's an airline that says United — Argentine Air Force on the side of it, it still could be commercial property. We need to know what those assets are. The purpose for discovery is to find what the assets are, where they are, what they're being used for, where they moved, when they moved. And that's why the bank subpoenas, which the banks are complying with and the banks have not objected to and the banks are not sovereigns, notwithstanding my colleague has now said, not in the lower courts, but in this Court, that BNA, one of the banks, is a sovereign, but it is not — it has not claimed sovereign immunity and it has not appeared here. This is — Sotomayor, I just was — my answer would be that if you don't know what Argentina is doing with the property and what labels it's slapping on the property, it's putting— Sotomayor, this is doing exactly what the Solicitor General is saying. It is asking for an accounting of everything that Argentina owns, regardless of what its purpose is. It is — well, we have — we don't know what its purpose is and until we find out what the assets are. So just answer yes. Yes. The answer is yes, and there's a reason. There's a reason for it. But doesn't that seem pretty extraordinary? You just said you can get discovery about a plane that says Argentine Air Force on the side of it. That seems to me to go to the heart of what the Deputy Solicitor General was talking about. That's pretty intrusive at a sovereign level to say you can find out how many jet fighters Argentina happens to have. Well, what — this subpoena relates to bank transactions. If there — and as legislative history that I referred to— But just before you get over that, I thought your position was that, yes, you can ask for discovery related to, you know, the Argentine Air Force. That's what the Federal Rules of Civil Procedure provide, that you— Could we say no to that and just say, look, here is the difficult question in the case. Of course, every subpoena, every subpoena has to have limits, and the limits are typically limits that have to do with the purpose of the subpoena. And where a sovereign is involved, maybe a district court has to be more careful that you are indeed searching for information in respect to assets out of the country that you could execute upon. Make that assumption with me for a second. I understand. And if you want to fight it later, go right ahead. But I have a question I'm trying to get to, and it is this. On that assumption, and we're only talking about butcher shops in Italy, there's marvelous Argentine beef, it's delicious, and that's the kind of thing you want a levy on. Okay. Fine. Now, if there were property in the United States and it were against a private person, another private person could get the information. If it was against a sovereign, the private person could get the information. If it's abroad and the shops are in Sicily, a private person can get the information despite the fact that to know about levying, you may have to know a lot about Italian law. Now, if it is a sovereign that you're trying to get the information, the other side is saying that's different. You say, why? Why is it? And the other one, you're going to say why. And the answer is going to be because there could be various interferences. We can't even tell you exactly what, but you're talking about every country in the world, who knows. Assume that there's something to their answer. Then where are we legally? We may be back, A, before the Tate letter, in which case we could say to the State Department, if you see such a problem, come in and tell us. Or we could say to the district courts, go ask the State Department case by case. If Congress wants to make a rule later, they can, but they haven't yet. Or we could say something else. That's the question. Those are the questions I'd like to get. Olson. Part of the answer is in the Altman decision itself, where you specifically said the views of the United States with respect to the construction of a statute of this Foreign Sovereign Immunities Act are not entitled to deference. If there is objection by the State Department with respect to a particular interest, particular party, particular situation, it can set that forth. Instead, what the United States has done is file a brief with respect to the construction of the statute. And the other answer, Justice Breyer, is specifically set out, if there are objections of that nature, diplomatic objections, sovereignty objections with respect to a particular official, again, the legislative history, and I know this may not be persuasive to everyone here, but it's something that the United States referred to as persuasive. In its brief, this Court found it persuasive, in part, in the Samantar case 4 years ago. It specifically says if there are those kind of objections, they are addressed to the district court, and the district court can address them subject to an abuse of discretion standard. So it's all right here. This is what Congress was intending. Kagan.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Yes. I was amused when you said that because a really obvious dilemma is where I see countries that would execute on military assets or diplomatic assets or so forth. And somebody came into a U.S. court and said, I want a discovery about those assets because after all they are going to let me execute, these other countries are going to let me execute on them. It's in aid of the judgment. So it fits within the discovery rules. What should the United States say to a request to a request like that? Fine? Yes. Because what you are seeking is information about the asset. You are not executing on the asset. And if the United States law said that that would be extraterritorial application. If it said you can't, that we are going to inhibit your ability to accomplish an execution or an attachment, but it's pursuant to the laws of a foreign country, pursuant to the decisions of a foreign tribunal, that would be the extraterritorial application. Well, that makes it a lot harder for me, because I thought you just looked to the Foreign Sovereign Immunities Act, and anything that is executable in this country under that, you can get information on to try to execute abroad. But you are saying, oh, no, it's more than that. It's stuff that you couldn't execute on in this country, but that some foreign countries will let you execute on. What am I supposed to do, look at the law of all of these countries? No, no. That's the purpose of discovery, Justice Scalia, so that the judgment creditor can find out what the assets are, and then it can go to the courts of this country or the courts of another country, and to comply with those laws. So it includes military assets, diplomatic assets, everything? Probably under diplomatic assets are covered by a separate convention, as we mentioned in our brief, diplomatic assets and consular affairs. Military assets. Military assets, even Section 1611 of the Foreign Sovereign Immunities Act only exempts certain military aspects, military property. It has to be you being used for military purpose and so forth. So if you find out something that isn't within the scope of that exemption, then you can execute on it, even in this country. No, no. I'm saying it is within the scope. It does — it is those limited military assets that you cannot execute on in this country. And you're saying, well, so long as we can do it abroad, we — The problem, Justice Scalia, as any litigant knows, you don't know what the judgment debtor is doing with its assets. You don't know whether it's disguising its assets. No, no, no. But assume the validity of the question. Does it — why is it that your position applies to military assets if that is beyond the scope of the Court's power here, but on the assumption of Justice Scalia's question, it's within and of your hypothetical that it's subject to execution in France? The answer to that is to the extent that there's a specific objection with respect to a scope — the scope of the discovery, it can be addressed by the district court as opposed to a blanket prohibition on finding out information with respect to a judgment debtor who has — Well, in making the rule, we're asking whether or not our rules should take account of this concern. And you say, well, it's up to the district court. Well, we're going to tell the district court what to do. So what do we say on this point? I think what you should say to the district court is what the Federal rules of civil procedure, which were not replaced by the Foreign Sovereign Immunities Act, do. If it's relevant to the subject matter or a defense of the action as under pursuant to Rule 69A2 and Rule 26, then it's something that there may be specific objections or specific concerns. But the Federal — Foreign Sovereign Immunities Act did not replace the Federal rules of civil procedure. It didn't intend to. And the rule, whether you divide it into the two parts, the substance was the same. The rule says you look to statutes of the United States. I don't know — I don't know how you get around the fact that the discovery rule itself says that these statutes of the United States are relevant. It says — it says the discovery rule, Rule 69A2, says the — Ginsburg. I was talking about advisory committee notes, what they meant. And they meant that the discovery — that there isn't a world where we have statutes and then the Federal rules, there's an interplay between the two, and that's what the advisory committee that drafted the rule told us about it. And I think that with respect to that, that provision, those statements of the advisory committee have to take it — be taken in the context of the statute itself did not intend to address discovery. That's quite clear. Section 69A2 specifically says, As provided in these rules or by the procedure of the State in which the Court is located, as the Second Circuit specifically said, the rules and the laws in the State of New York and the rules in the Federal rules of civil procedure, discovery and aid of execution is very broad and it may go to any person. And if you meet the relevant standard, anywhere the property may be located. Scalia, let's assume that New York has an exemption from levying on property. It says homestead. You can't levy on the homestead. But Florida does not have that exemption. Can you, getting a judgment in a New York State court, seek to discover what homestead property the defendant has elsewhere? Well, you assume the answer in the question that you asked, Justice Scalia. We don't know whether it's properly subject to a homestead until we find out how many homes, where they are, whose owns them, what they're being used for. The rules are that then you can't levy on property. Come on. I'm doing the hypothetical. Okay? And my hypothetical is the discovery is what homes do you own in other States? Yes. The same language as the New York statute which exempts those homes. I submit. I submit that the Federal rules of civil procedure would allow a judgment creditor to ask a bank or other persons or even the judgment debtor, what homes do you own? Yes. And you think you can levy on those homes in Florida, even though New York wouldn't let you do it? You could levy on those homes in Florida if Florida allows you to do so, yes. You can take that judgment in New York and go to Florida and seek the enforcement or execution of that judgment. This is the whole thing. It's a judgment limited to property other than homesteads. You take that judgment to Florida, it doesn't expand. It's the same judgment. Yes. It's a judgment for money due. You borrowed money, you didn't pay it back, and you have a judgment that entitles you to recover that money. But not from homesteads. Well, if that's your hypothetical, that the judgment exempts homesteads, I don't know whether that gets pretty far afield here. We're talking about the fact that you can't execute on homestead property, it means any judgment in New York excludes homesteads. A judgment creditor who has a bond in New York City and has and the debtor refuses to pay it and gets a judgment from a court which has jurisdiction, then can take that judgment and go to other places where there is property located and execute or attach on that property, depending upon the laws of that jurisdiction. Ginsburg. There are countries that have more restrictive views than we do about what information, financial information, is confidential. So this omnibus order says worldwide, we want to know what property worldwide. And suppose the country in which the property is located says, in our system, this property is the information. The information that was sought from the bank was confidential. What then? This Court, I think it's the Society Nationale case, has said that a court can order discovery even with respect to where the person to whom the discovery is addressed says, I can't give you that information. The case that your court decided involved Mexico, and the party claimed that the laws of Mexico will not let me provide that information. This Court held that, yes, indeed, the courts of the United States may require the production of that information. I think it's a- Breyer. Can you do this in discovery normally? Can't someone go in and say, I don't think the subpoena or this order is too broad, it will do da, da, da, there isn't that much need for it? Please don't do it, Judge. And the judge has a lot of discretion to say no. Exactly. All right. Now, is there any objection on your part, which there may well be, that we were to say one of the problems here is that this order, although they may have reason for it, is requiring discovery of airplanes, it's requiring discovery of consulates, it's requiring discovery of all these other things, things that, at least presumptively, our statutes would not allow them to execute upon. Before you give an order allowing discovery of that kind of thing, Judge, you better have very good reason for it. Well, the that's, you're talking about an abusive discretion standard, and when you talk about airplanes, they may be used for commercial purposes. This Court has held that. I'm not saying that, no. I'm just saying where it is on its face, something that couldn't be discovered. Well. Something that couldn't be executed upon. In this country, be very, very careful. We do those things, and they are very often ignored. But nonetheless, the District Court went through an elaborate process. It narrowed the scope of the subpoenas with respect to property in Argentina. It narrowed the scope of the subpoenas with respect to the persons identified in the subpoenas. It responded to concerns about that. It made itself available to narrowing the scope of things. Argentina decided to make a blanket objection to any information other than information with respect to assets that could be levied on in the United States. And that, we think, is not the correct interpretation of FSIA or the Federal rules. Sotomayor, if I am understanding your position, you – I think what you're saying, the judgment here is only for money due, whatever the amount was. And that's the judgment you have. How you get that judgment paid depends on where the assets are located, correct? Yes. And so any – any protection to those assets has to be provided by the jurisdiction in which they're located. That's correct, Your Honor. So your position, whether this is a sovereign or an individual, is that if they get a homestead exemption in New York, that if the property's in New York, they're entitled to it. But if they have property in Florida and Florida doesn't give a homestead exemption, they can get that home. Precisely. They can't get the home in New York, but they can get the home in Florida.  And if I hadn't said that, I would have said that. But in answer to Justice Kagan's question, even though there might be a country out there that doesn't make any property immune by a sovereign, and you could go and attach any property in that country. To the extent that the – exactly. I think I understand completely your question. My answer is precisely to the ability to attach or levy is dependent upon the law of the place where the property is located, and there are many jurisdictions that cover different things, and we're dealing with judgment debtors, which is – and it's true across the board, Justice Scalia – the judgment debtors may be doing all sorts of things to avoid execution or avoid paying their debts. In this case, we have specific findings by the courts below that Argentina has ample resources to pay these debts. It's submitted to jurisdiction. It is specifically stated that it will not obey the orders of the courts of the United States, including, presumably, any decision from this Court. How many of the bondholders settled with Argentina? My understanding is the vast majority of them did. The vast majority of the bondholders settled with Argentina. Yes, because anybody who's ever litigated against Argentina knows that it's probably maybe less costly to just give in on whatever terms Argentina offers, but the fact is that these are debts, undeniably due and owing. Sovereign immunity was waived, and I must emphasize the provision about the waiver provisions, which are in Joint Appendix 106 and 107, are as broad as the law allows. They waive immunity from suit, they consent to suit, they waive the Sovereign Immunities Act, and even at the last few lines of the waiver, it specifically talks about execution in foreign countries. Kagan If you win on the categorical question that's presented here, do you think it's still open to Argentina to go back to the district court and to say modify your ruling for this or that privilege reason or because the order is over-inclusive or any of these more prudential considerations? Yes, I believe that's the case, Your Honor. This discovery is a continuing process, although substantially the discovery demands have been met so far, but it's a continuing process. There can be objections before with respect to, wait a minute, that's our ambassador. Of course, other laws cover that sort of thing, and the judge was very careful about that sort of thing. Alito What exactly would a district judge do in those circumstances? So you, Argentina says this is military property, and what would the judge inquire, what would the judge do before deciding whether to allow discovery of something like that? Would it look to the law of the country where the property is located? Would it make some kind of factual inquiry as to whether it really is military? What would go on? I think the judge might ask for some assurances that, from Argentina, that you're telling the truth this time, that there's you are these are really military assets and not something disguised as military assets. Kennedy Does the waiver extend to military property? The waiver extends as far as the law will permit, and we submit that. Kennedy Then the waiver just restates the immunity that's provided in the Foreign Sovereign Immunities Act. Alito No, the waiver waives the Foreign Sovereign Immunities Act defenses, it waives immunity from suit and explanation. Kennedy But not as to military property, so how do we know how far the waiver extends? Alito The waiver extends to anything that Argentina decided that in order to borrow money in this country, it had the sovereign right to waive sovereign immunity under the laws of the United States. Kennedy I'm asking whether or not the waiver extends to Argentine military property. Alito I believe that it does, Justice Kennedy, because if you construed the Foreign Sovereign Immunities Act of prohibiting a foreign sovereign from waiving its immunity, you would cripple the foreign sovereign from deciding that I need to borrow money in order to borrow money. Kennedy Does it waive immunity as to a consular residence or an embassy building? Alito It — I think it depends upon the circumstances, but there is a separate treaty that covers consular affairs that is different than this that does provide immunity. And we're not talking about any of those things. We're talking about bank transactions, which are covered by the subpoena, to allow a judgment creditor that has a judgment over Argentina, and Argentina is not asking to be treated like a private citizen as the law requires. Roberts Thank you, counsel. Mr. Blackman, you have three minutes remaining. Blackman Thank you. First, in answer to Justice Kagan's question about going back, based on the decision below, in the next round, the district court specifically said, I don't care about limitation to diplomatic, I don't care about limitation to military. He said those might otherwise be good arguments, but the Second Circuit has already passed upon that and the FSA doesn't apply full stop. So it's a chimera to think that the district court is going to fix this. This Court has to fix it. Secondly, just to go to Mr. Olson's point, these subpoenas, and I'm reading from which Argentina owns, and then it goes on for pages to list things that are supposedly within the definition of Argentina, including the Ministry of Foreign Affairs, the Ministry of Defense, and the National Strategic Military Intelligence Directorate. So Justice Sotomayor was absolutely right. This covers everything, and the Second Circuit said that everything is fair game. On the broader points of the statute, the FSIA, as this Court has held in the Amarada Hess case, in Verlinden, in fact, virtually every case you've decided from Verlinden, which is the first one, is that this is the comprehensive basis on which U.S. courts exercise power over foreign states. And as Justice Ginsburg pointed out, that power is very sharply broken down between the broader power of jurisdiction to adjudicate, which is what 1606 says, once there's jurisdiction to adjudicate, you're treated for purposes of that adjudication like anyone else, and the much more limited power to execute. And the legislative history specifically says that the phrase in the statute in 1610a of attachment in aid of execution, as opposed to execution, which is a separate word there, and attachment is a separate word there, attachment in aid of execution means the whole panoply of supplemental procedures that a court can use to assist in execution. Discovery in aid of execution, as the language indicates in Rule 69, is one of those procedures. There's no justification for saying that that means goes way beyond the allowable end. Otherwise, you not only have the tail of discovery kind of wagging the substantive dog, you have a tail that's cut off from the dog. It's floating around in the ether. We can take discovery of anything, no matter if it's conceivably within the reasonable scope of execution and the power that the Federal court has or not. We think that's wrong and we ask the Court to reverse it. Roberts. Thank you, counsel. The case is submitted.